## SUPREME COURT.

The Seneca Nation of Indians agt. Thomas J. L. Tyler.

Since the decision of the chancellor in *Strong & Gordon* agt. *Waterman,* (11 *Paige,* 607,) the tenure of the *Seneca Nation of Indians* to their reservation, and their right to prosecute and maintain actions for the enforcement and protection of their rights, appears to have been settled by an act of the legislature.

The act for the protection and improvement of the Seneca Indians, residing on the Cattaraugus and Allegany Reservations in this state, passed May 8, 1845, in effect created those Indians into a corporation, and authorized them to bring and maintain actions in their corporate name.

Therefore, an action brought by said Seneca Nation of Indians, in their own name, upon a promissory note, given and made payable to them, may be sustained; and it is not necessary that they should aver their act of incorporation, or their authority to sue in the courts of this state.

*Chautauque Special Term, Feb.,* 1857.

Demurrer to the complaint.

The complaint for the first cause of action states, that the defendant, Thomas J. L. Tyler, on the 14th day of May, 1855, at the city of Buffalo, in the county of Erie, in the state of New-York, made his certain promissory note in writing, and delivered the same to the plaintiff, whereby the said defendant, for value received, promised to pay the said plaintiff, or bearer, the sum of $500, on demand. And that the said plaintiff afterwards,

and on or about the 17th day of December, 1855, duly demanded the payment of the said note of the said defendant, and the defendant refused to pay the same, or any part thereof; and that there was, at the time of commencing the said action, and still is due and unpaid, from the said defendant to the said plaintiff, on the said note, the sum of $500, and interest thereon from the 17th day of December, 1855.

And for a further and second cause of action, the plaintiff, by his complaint alleged, that the said plaintiff, on or about the 6th of October, 1854, recovered, in an action in the supreme court of the state of New-York, wherein the Seneca Nation of Indians was plaintiff and Thomas J. L. Tyler was defendant, a verdict against the said defendant for the sum of $480, or thereabouts; and by virtue of the recovery of said verdict, the said defendant, Thomas J. L. Tyler, became liable to pay the said plaintiff the disbursements of the plaintiff for witness' fees, and for the attendance of the witnesses of the said plaintiff, in the said last-mentioned action, amounting to twenty dollars.   And that the said action, in which the said plaintiff recovered the said verdict, was for taking and converting certain trees, the property of the said plaintiff.   And the said Thomas J. L. Tyler, in consideration of the recovery of the said verdict, and in consideration of being liable to pay the said disbursements, and upon settlement and liquidation of said verdict and disbursements, and the interest due thereon on the 14th of May, 1855, at the city of Buffalo, in the state of New-York, made, executed and delivered to the said plaintiff his certain promissory note, or agreement in writing, of which the following is a copy :—

"For value received, I promise to pay the Seneca Nation of Indians, or bearer, five hundred dollars, on demand.   Buffalo, May 14th, 1855.

" The above note is to be cancelled or delivered up, in case the Seneca Nation of Indians, or their attorney, D. Sherman, Esq. acknowledges satisfaction of recovery and costs, in a certain action depending in the supreme court, by them as plaintiffs, against Thomas J. L. Tyler.

                                        " T. J. L. TYLER."

The Seneca Nation of Indians agt. Tyler.

And the complaint of the said plaintiff further showed, that neither the said Seneca Nation of Indians nor the said D. Sherman, their attorney, had acknowledged satisfaction of recovery and costs of the action, in the supreme court last above mentioned ; nor had the said defendant paid the amount of said recovery, costs and disbursements aforesaid, nor any part thereof; nor had the said defendant paid the said five hundred dollars mentioned in the said last-named note, or agreement in writing, nor any part thereof. And this complaint further showed, that the said plaintiff, on or about the 17th day of December, 1855, demanded of the said defendant the payment of the said five hundred dollars, mentioned in the said agreement or note last aforesaid, and the said defendant refused to pay the same, or any part thereof; and there is still due to the said plaintiff thereon the sum of five hundred dollars, with interest from the 17th day of December, 1855. Whereupon the said plaintiff demands judgment against the said defendant for one thousand dollars, and interest from December 17th, 1855, besides costs.

The said defendant demurred to said complaint, on the ground that the same was insufficient in law, and assigned the following causes of demurrer :—

1st. The complaint did not state that the said Seneca Nation of Indians was a sovereign state, or a legal corporation, nor did :t show by what right they contracted with the defendant, nor by what right or dignity the said plaintiff sued in the courts of this state.

2d. The said Seneca Nation of Indians are not known in law as a state or nation, nor as a legal corporation authorized to contract or recover bills or notes as contracting parties; nor are they authorized to sue in the courts of this state for the cause of action set forth in the said complaint.

D. Sherman, *for plaintiff.*
E. Ward, *for defendant.*

Mullett, Justice. This demurrer appears to present two questions :—

*First.* Whether it was necessary for the plaintiff in the complaint to set forth or allege that they were a sovereign state, or a legal corporation, or to show by what right or dignity they sued in the courts of this state?

*Second.* Whether the Seneca Nation of Indians are authorized to contract or recover bills of exchange or promissory notes, as contracting parties, and to maintain actions on them, in the courts of this state?

The first cause of demurrer calls in question the capacity of the Seneca Nation of Indians, in their own names, to maintain suits in the courts of this state, and necessarily suggests some inquiry into the relation which exists between the Indians and the white people as the occupants of the same territory.

The several tribes or nations of Indians, among which was the Senecas, occupied the vast and luxuriant forests of this and some of the adjoining states as their hunting grounds, when our European forefathers, under the claim of original discovery, entered upon, took possession of the country, and commenced its cultivation, improvement and civilization—which has been so signally blessed. · Their claim was practically limited to the sovereignty of the country and the, ultimate title to the land; but they did not claim to disturb the Indians in their possession.

Upon the principle laid down by Vattel, (*Book I,* §§ 81, 209,) they might have asserted a larger right—for the native Indians lived by fishing and hunting, without converting to the purposes of agriculture any considerable portion of the vast trail of country over which they wandered.   Mr. Justice BRONSON, in the case of *Ogden* agt. *Lee,* (6 *Hill's Rep.* 548,) says, that the Europeans who settled this country pursued the more just and politic course of acquiring the Indian title by purchase.   The claim which they set up and asserted amounted to little more than a pre-emption, or right of purchasing from the Indians all the lands within the bounds of their respective discoveries, to the exclusion of all other nations.

In the case of *Ogden* agt. *Lee,* above referred to, which was an action of *trover,* brought by the Ogden Company against Lee and another for a quantity of saw-logs cut by the Seneca Na-

The Seneca Nation of Indians agt. Tyler.

tion of Indians on the Cattaraugus Reservation, and sold to, and taken away by the defendants, the learned judge, BRONSON, came to the following conclusions:—

" That the Seneca Nation of Indians had never parted with the title to the lands on which the timber was cut; that their right was as perfect then (in 1842) as it was when the first Europeans landed on this continent, with the single exception that they could not sell without the consent of the government, —their right of occupancy, to them and their heirs forever, remained wholly unimpaired; that they were not tenants of the state, nor of its grantees; that they held under their own original title ; that the plaintiffs had acquired nothing but the right to purchase whenever the owners might choose to sell; that in the meantime, or until the tribe should become extinct, the Seneca Indians would remain the rightful lords of the soil ; that in the case then under consideration the Indians had cut and sold their own timber, and the learned judge could see no principle upon which the plaintiff could have an action, either against them or their vendees. This judgment was affirmed on error, by the court for the correction of errors, in 1846. (5 *Denio's Rep.* 628.)

Although this, as well as some previous decision of the courts of this state, concede to the Indians the absolute right to the use, occupancy and possession of their land, there does not appear to have been any adjudication in the courts of law, in which the manner of enforcing that right by the native Indians was brought in question.

The case of *Strong* and *Gordon*, chiefs of the Seneca Nation of Indians, agt. *Waterman*, (11 *Paige's C. R.* 607,) was an application to the chancellor, on the 6th May, 1845, to dissolve an injunction, which had been granted by the vice-chancellor of the eighth circuit, restraining the defendant from committing trespasses and wastes upon the Indian lands of the Cattaraugus Reservation, or interfering with the possession of the Indians residing on such reservation. The bill was filed by the complainants, who were two chiefs of the Seneca Nation of Indians, and who had been appointed by a general council of

chiefs for that purpose, in behalf of themselves and the other individuals of the Seneca Nation residing on their several reservations. The learned chancellor, in giving his opinion upon the application, after declaring that the right of the Indians in this state to the use, possession and occupancy of the lands of their respective reservations, which had not been by them voluntarily ceded to the people of the state, or granted to individuals with the assent of the state, did not, at that time, admit of a doubt; that no provision, however, had been made by law for the bringing an ejectment to recover the possession of Indian lands in the Cattaraugus Reservation, and that the right to the possession was in several thousand individuals in their collective capacity, which individuals, as a body, had no corporate name by which they could institute an ejectment suit; that the bill in that case showed that the defendant interfered with the rights of the Indians, who attempted to occupy the lands claimed by him, which appeared to be sufficient to entitle them to an injunction to protect them in the possession and enjoyment of their land; but that he had not been able to find any provision which authorized the bringing of a suit, in a common-law court, for the actual damage which the Indians may have sustained by trespasses upon their lands, or for use of lands intruded upon—came to the conclusion that the right of the Indians to the undisturbed possession and enjoyment of the lands being established, by the humane principles and policy of the state, if the common law furnishes no sufficient remedy for the protection of those rights, it was part of the acknowledged jurisdiction of that court to interpose for their relief, and therefore that, upon the complaint made by the complainant's bill, that court was bound to decree an account for the injuries which the Indians had sustained by the trespasses upon their lands, which had already taken place, and also to protect them by injunction against further threatened injuries from the defendant and those in his employ; and decided that the Indians could not therefore institute a suit in the name of the tribe, but must sue in the same manner as other citizens would be required, or authorized to sue for the protection of similar rights, and as

the individuals composing the Seneca Nation of Indians, and residing on, and entitled to their several reservations, under the authority of their chiefs in council, who have the right to direct in all matters relating to the general interest and business of the nation, and that the parties were therefore properly before the court, and the complainant entitled to retain the injunction.

Since the decision of the chancellor in the case of *Strong and Gordon* agt. *Waterman*, above referred to, the tenure of the Seneca Indians to their reservation, and their right to prosecute and maintain actions for the enforcement and protection of those rights, appears to have been settled by the legislature. An act for the protection and improvement of the Seneca Indians, residing on the Cattaraugus and Allegany Reservation in this state, passed May 8th, 1845, in effect created those Indians into a corporation, and authorizes them to bring and maintain suits in their corporate name. The first section declares that the Seneca Indians residing on the Allegany and Cattaraugus Reservation in this state, shall be deemed to hold and possess the said reservation as a distinct community; and in and by the name of " *The Seneca Nation of Indians*," may prosecute and maintain, in all courts of law and equity in this state, any action, suit or proceeding, which may be necessary or proper, to promote the rights and interests of the said Indians, and of the said nation, in and to said reservation, and in and to the reservation called " The Oil Spring Reservation," and every part thereof; and especially may maintain any action of ejectment to recover the possession of any part of the said reservation, unlawfully withheld from them; or any action of trespass, or on the case for any injury to the soil of the said reservation, or for cutting down or removing, or converting any tin. :er or wood growing or being thereon; or any action of replev. for any timber or wood removed therefrom : and may maintain any action or suit as aforesaid for the recovery of any damages for any injury to the common property or rights of the said Indians; or for the recovery of any sum of money, property, or effects, due or to become due, or belonging, or in any way appertaining to the said Indians in common, or to the said Seneca Nation.

It appears to me that this statute of 1845 settles all the questions raised by the demurrer, and renders the further examination of the subject unnecessary.

The demurrer must be overruled with costs, with leave to the defendant to answer anew on payment of the costs of the demurrer within twenty days after notice of this decision.